**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No.  97-20979
_____

STERLING WHITE,

Plaintiff - Appellant,

VERSUS

THE GOODYEAR TIRE AND RUBBER COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-93-CV-4049 & H-94-CV-3508)
_____

September 29, 1999

Before GARWOOD, DUHÉ, and BENAVIDES, Circuit Judges

DUHÉ, Circuit Judge:[1]

Sterling White sued The Goodyear Tire and Rubber Company ("Goodyear") for race discrimination under Title VII and disability discrimination under the Americans with Disabilities Act ("ADA"). A prior panel of this Court reversed the district court's grant of summary judgment on both claims. On remand, after taking additional evidence, the district court granted summary judgment on the disability claim because White failed to prove he was qualified, and therefore did not establish a prima facie case. The district court

_____

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

also granted summary judgment on the race discrimination claim because White had not exhausted his administrative remedies. We affirm as to that claim, and reverse and remand the ADA claim.

FACTS AND PROCEEDINGS

White worked as a baler helper at Goodyear's plant in Houston, Texas. He worked in an unairconditioned building, surrounded by extremely hot rubber, fumes, and chemicals. In October 1991, White experienced a sickle cell crisis and took extensive sick leave. Goodyear terminated him on August 7, 1992.

White filed with the Equal Employment Opportunity Commission (EEOC) a charge of employment discrimination under the ADA. The EEOC issued White a right to sue letter. White asserted in a deposition that he also filed a race discrimination complaint with the EEOC.

White, acting pro se, sued Goodyear in federal court for race and disability discrimination. Eight months later, an attorney represented White for the first time in federal court. White then sued Goodyear in Texas state court, alleging that Goodyear terminated him in retaliation for filing a workers' compensation claim. Goodyear removed the retaliation claim to federal court and the actions were consolidated.

Goodyear successfully moved for summary judgment on all claims. White appealed to this court which vacated the grant of summary judgment on White's ADA claim, because White did not have notice that his ADA claim would be considered for summary judgment. As a result, he did not conduct essential discovery or place evidence in the record to support his claim.

The first panel also reversed the grant of summary judgment on White's Title VII race discrimination claim. The district court had determined that White failed to exhaust his administrative remedies which barred him from suing. The first panel analyzed the summary judgment record evidence as follows. Goodyear submitted the EEOC's entire file pertaining to White's ADA charge, Charge Number 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. Goodyear stated in its brief in support of summary judgment that it requested and received all the EEOC files pertaining to White. However, Goodyear's assertion in its brief was not competent summary judgment evidence. The Certification of Documents from the EEOC stated that the file was a true and accurate copy of the file pertaining to Charge Number 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. However, the Certification did not preclude the possibility that another EEOC file documenting White's race claim existed, but with a different charge number. In addition, White stated in his deposition that he filed a Title VII race discrimination complaint with the EEOC after he filed the ADA complaint. The first panel held that Goodyear had not met its burden of establishing through competent summary judgment evidence the absence of a dispute as to whether White exhausted his administrative remedies.

On remand, the district court again granted summary judgment to Goodyear on both the ADA and Title VII race discrimination claims. Regarding the ADA claim, the district court held that White failed to establish a prima facie case because he did not prove he was qualified to work as a baler helper. Regarding the Title VII

3

claim, the district court held that: (1) White failed to exhaust his administrative remedies; and (2) he failed to establish disparate treatment.   White appeals.

STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standards used by the district court, reviewing the facts and drawing inferences in favor of the nonmoving party. See Elliott v. Lynn, 38 F.3d 188 (5th Cir. 1994). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c);  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

ADA CLAIM

The ADA prohibits an employer from discriminating against a qualified individual with a disability on account of his disability. See 42 U.S.C.A. § 12112(a) (West 1997).  To establish a prima facie case of discrimination under the ADA, White must show that: (1) he has a disability;  (2) he is qualified to work as a baler helper; and (3) he suffered an adverse employment decision because of his disability.  See, e.g., Zenor v. El Paso Healthcare System, Ltd., 176 F.3d 847, 852 (5th Cir. 1999).  A "disability" is:  (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment;  or (C) being regarded as having such an impairment. See 42 U.S.C.A. § 12102(2).  Whether White has created a genuine issue of material

4

fact concerning each element of his prima facie case turns on his doctors' releases.

To support his claim that he was qualified to work as a baler helper, White submitted four doctors' releases permitting him to return to work. His June 15 release permitted "White . . . to return to work, with no restrictions."[2] The June 22 release permitted White to "[r]eturn to regular duty, no restrictions." The June 24 release noted that White "was seen and examined . . . and is released to return to work." White also received a release from a doctor who had examined him two years earlier and had pronounced him capable of working as a baler helper despite an abnormally low platelet count.

Goodyear counters that White could not perform the essential functions of a baler helper. In support, it points out that White's doctors noted that White must avoid fumes, chemicals, and excessive heat. White himself acknowledged that chemicals and fumes were unavoidable in the finishing room where he worked. Goodyear showed that the doctors' releases were restricted, later modified, or provided by doctors unfamiliar with White's sickle cell crisis. This conflicting evidence creates a genuine issue of material fact concerning White's qualifications.

---

[2] White acknowledges that this doctor later modified his release. The modified release permitted White to return to work with a plan for monitoring his platelet count and recommended that Goodyear "make reasonable accommodations to provide [White] with an environment without heat and preferably without fumes and chemicals."

White asserts he was not disabled, citing to his various doctors' releases.  However, White contends Goodyear regarded his sickle cell anemia as an impairment that substantially limited his major life activity of work, and thereby regarded him as disabled. Transcripts of conversations with Goodyear's nurse and personnel director indicate that Goodyear would not permit White to return to work even with a full release from his doctors, because Goodyear perceived White's sickle cell anemia to substantially limit his ability to work and considered that his condition disabled him from working at any job in any part of any chemical plant.  Goodyear asserts that White is not disabled because he can perform a wide range of jobs other than baler helper.  Further, Goodyear asserts that it does not regard White as disabled.  The evidence creates a genuine issue of material fact concerning whether White is disabled and whether Goodyear regards White as disabled. This same evidence creates a genuine issue of material fact concerning why Goodyear fired White.[3]   Because White created a genuine issue of material fact concerning all of these elements of his prima facie case, we reverse and remand.

TITLE VII

---

[3] A baler helper's essential functions include performing the following tasks in the plant's unairconditioned, fume and chemical filled finishing room: (1) removing 80 pound bales of synthetic rubber from a conveyor belt; (2) packaging the bales of rubber; (3) constructing heavy cardboard containers; (4) cleaning heavy metal boxes; and (5) pushing or pulling boxes containing bales of rubber.

To sue under Title VII, a plaintiff must first file a charge with the EEOC within 180 days of the discriminatory event and initiate the suit within 180 days of receiving a right to sue letter from the EEOC. See U.S.C.A. § 2000e-5 (e)(1) (West 1997)

The district court originally held that White did not file a race discrimination charge with the EEOC and therefore did not exhaust his administrative remedies. The first panel reversed and remanded. After admitting additional evidence, the district court again granted summary judgment to Goodyear because White did not exhaust his administrative remedies. Under the law of the case doctrine, this panel will not reexamine whether White exhausted his administrative remedies unless: (1) the evidence submitted on remand for summary judgment purposes is substantially different from the evidence previously reviewed by this court; (2) controlling authority has changed with regard to exhaustion of remedies; or (3) the first panel's decision was clearly erroneous and would work a manifest injustice. See United States v. O'Keefe, 169 F.3d 281, 283 (5th Cir. 1999). Both parties focus their arguments only on the effect of the additional evidence submitted on remand.

By the time of remand, the EEOC had in the ordinary course of business destroyed the file for Charge Number 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 and other files from the same time period. However, Goodyear submitted an EEOC affidavit stating that: the EEOC did not issue White a right to sue notice for race discrimination; the charge data system that logs critical data on all charges showed no race charge filed by

7

White against Goodyear; and the EEOC did not investigate any race discrimination charges by White against Goodyear.[4]

White authenticated and submitted as evidence various documents that appear to be copies of documents that the EEOC once had in its possession but that do not appear in Goodyear's copy of the file for Charge Number 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. White's documents include: (1) a questionnaire dated April 9, 1992, in which White stated that he had been discriminated against on the basis of "Race, Illness, That must be investigated;" (2) an EEOC intake questionnaire dated April 13, 1992, with the "race" box checked; (3) an EEOC affidavit dated July 26, 1992, in which White characterized Goodyear's actions as disparate treatment "between me myself being Black and the way Whites are treated;" and (4) an EEOC letter dated October 20, 1992 referring to White's affidavit and noting that White's complaint would not be incorporated into a "class investigation."

The additional evidence submitted on remand establishes that White did not exhaust his administrative remedies. Goodyear presented an EEOC affidavit noting that the EEOC's charge data system which logs critical data on all charges showed no race discrimination charge filed by White against Goodyear. White's evidence also supports that he did not file a race discrimination claim. The October 20 EEOC letter makes clear that White had not filed a discrimination charge before the date of the letter. The

---

[4] White emphasizes that the affidavit does not describe the nature or accuracy of the data system.

letter specifically refers to the July 26 affidavit and informs White that he should bring the affidavit with him _if he plans to file a discrimination charge_. The EEOC intake questionnaire, the April 9, 1992 questionnaire, and the EEOC affidavit all _predate the EEOC letter_, and therefore did not equate with filing a charge with the EEOC. Since White did not satisfy a precondition to suing under Title VII, we affirm the grant of summary judgment to Goodyear based on White's failure to exhaust his administrative remedies.

AFFIRMED IN PART and REVERSED and REMANDED IN PART.